OPINION OF THE COURT
Charles J. Markey, J.
*505 The Structured Settlement Protection Act (General Obligations Law § 5-1701 et seq.) was enacted in 2002 as a result of factoring companies using “aggressive advertising, plus the allure of quick and easy cash, to induce settlement recipients to cash out future payments, often at substantial discounts, depriving victims and their families of the long-term financial security their structured settlements were designed to provide” (Assembly Mem in Support, 2002 McKinney’s Session Laws of NY, at 2036). Under this law, such transfers are now prohibited unless approved by a court based upon express findings required by General Obligations Law § 5-1706 (a) through (e).
Ayana Logan is the recipient of structured settlement payments due her as a result of the settlement of her mother’s wrongful death action. The “Settlement Agreement and Release” (see exhibit C of petition) provides in section 2.0 entitled “PAYMENTS” that in consideration of the release of all claims related to the action entitled Logan v Condon (index No. 8388/95), that Ayana Logan and her attorney be paid, at the time of settlement, $550,000 and that Ayana Logan receive, beginning on February 5, 2005, periodic monthly payments of $1,376 for life, with 40 years certain.
Section 3.0 of that agreement entitled “PAYEE’S RIGHTS TO PAYMENTS” provides in part, as follows:
“Plaintiff, acknowledges that the Periodic Payments cannot be accelerated, deferred, increased or decreased by the Plaintiff or any Payee; nor shall the Plaintiff or any Payee have the power to sell, mortgage, encumber or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise. Any transfer of the periodic payment is prohibited by the terms of the structured settlement and may otherwise be prohibited or restricted under applicable law . . . .”
The petitioner herein, pursuant to the statute, now seeks court approval of the transfer agreement between petitioner 321 Henderson and Ayana Logan, by which Ayana Logan would sell and transfer to 321 Henderson her rights to certain payments remaining under the structured settlement agreement, to wit: 108 monthly payments of $376 each, beginning June 15, 2007 and ending May 15, 2016, in exchange for a net lump-sum payment of $20,500.
In her affidavit in support of the petition, Ayana Logan avers that she is a 30-year-old single mother of an eight-year-old child who resides with her; that she is employed as a legal assistant *506 earning $20,000 annually; that she needs the $20,500 for a down payment on a house and that she does not have other assets or resources to finance these needs.
Before addressing whether the criteria upon which the court can approve the transfer agreement pursuant to General Obligations Law § 5-1706 has been met, it must first be determined whether there is any basis upon which the court can approve the transfer agreement in light of the express, unequivocal language of section 3.0 of the settlement agreement, whereby Ayana Logan contractually surrendered her power to transfer or assign her rights to the periodic payments.
Prior to the enactment of the statute, it was clear that provisions in settlement agreements, such as the one at bar, which denied payees the power to assign or transfer payments could be enforced to invalidate assignments of future payments (see Singer Asset Fin. Co. v Backus, 294 AD2d 818 [2002]; C.U. Annuity Serv. Corp. v Young, 281 AD2d 292 [2001]). This court is in accord with other prior court decisions which have held that the enactment of the statute did not change the law to now allow the transfer or assignment of the right to payment as long as the criteria of section 5-1706 were met, notwithstanding restrictive language in the settlement agreement (Matter of Emerald Funding, Sup Ct, Monroe County, Siracuse, J., index No. 3376/03; Matter of Ovation Capital, Sup Ct, Erie County, Marouche, J., index No. 2459/03; Matter of Declemente, Sup Ct, Queens County, Grays, J., index No. 7662/03; Matter of Settlement Capital Corp., Sup Ct, Wyoming County, Dadd, J., index No. 34729/03).
While Insurance Law § 3212 (d) (4), enacted at the same time as the Structured Settlement Protection Act, provides that “[t]he benefits, rights, privileges or options accruing under an annuity contract funding a structured settlement which would otherwise be nontransferable under this subsection may be transferred in accordance with title seventeen of article five of the general obligations law” (emphasis added), this provision does not specifically preclude or prohibit the recipient from contractually waiving the power to assign or transfer rights to future periodic payments. Moreover, General Obligations Law § 5-1702 (d) provides that defendant, in negotiating a structured settlement, must disclose in writing to the claimant “where applicable, that any transfer of the periodic payments is prohibited by the terms of the structured settlement.” Thus, the statute itself expressly allows for an anti-assignment provision in a structured settlement agreement.
*507 While a prohibition against assignments or transfers may be waived by the obligor (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957]), it may not be waived by the payee since the provision is not for his or her benefit (see Singer Asset Fin. Co., LLC v Wyner, 156 NH 468, 937 A2d 303 [2007]). Therefore, although payee Ayana Logan cannot waive the prohibition against assignment, Metropolitan Tower Life Insurance Company, also known as MetLife Tower Resources Group, as obligor, can do so. Such a waiver, however, will not be inferred from mere silence or inaction (Chapin v Chapin, 295 AD2d 389 [2002]; Singer Asset Fin. Co., LLC v Wyner, supra). The fact that the obligor, in this instance, did not appear in opposition to this petition, is therefore not a sufficient basis to hold that it waived the anti-assignment provision contained in the settlement agreement. The court, thus, finds that in view of the restrictive language in the settlement agreement whereby Ayana Logan gave up her “power to sell, mortgage, encumber or anticipate the Periodic Payments, or any part thereof, by assignment or otherwise,” there is no legal basis upon which this court can approve the transfer agreement pursuant to the statute.
Nevertheless, even if the statutory criteria of General Obligations Law § 5-1706 for approving a transfer agreement were considered, this court would not approve it. The use of a discount rate of 18.58% in addition to a “compliance and administrative fee” of $750 is not fair and reasonable (General Obligations Law § 5-1706 [b]; see Matter of 321 Henderson Receivables Ltd. Partnership, 2 Mise 3d 463 [2003]; Matter of Settlement Capital Corp. [Bollos], 1 Mise 3d 446 [2003]; Matter of Settlement Funding ofN.Y., 195 Mise 2d 721 [2003]; Matter of Settlement Capital Corp., 194 Mise 2d 711 [2003]). In addition, whereas Ayana Logan is responsible for the support and care of her eight-year-old child, the court finds that it is not in the best interest of the payee to go forward with the transfer agreement (General Obligations Law § 5-1706 [b]). Further, it is to be noted that while Ayana Logan has stated that she needs the $20,500 to purchase a home, she sets forth no other details regarding this transaction; nor does she explain her immediate need for the money, in light of the fact that she received a portion of the lump-sum settlement payment of $550,000 in 2005.
Accordingly, it is ordered and adjudged that the application is denied and the petition is dismissed.